IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| J.T, Jr. a minor who sues by and through SUSAN THODE, his mother and next of friend,<br><br>　　Plaintiffs,<br><br>v.<br><br>MONSTER MOUNTAIN, LLC, D/B/A MONSTER MOUNTAIN MX PARK; DOUBLE AA ENTERPRISES, LLC; AND PRECISION CYCLES, LLC, D/B/A TRACK SIDE PERFORMANCE PRO SHOP; WILLIAM ANDERSON, III; MILAN HARRIS,<br><br>　　Defendants. | CASE NO.: 2:09cv643- WHA |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff submits the following in opposition to the Motion for Summary Judgment filed by Defendants Monster Mountain, LLC, d/b/a Monster Mountain MX Park; Double AA Enterprises, LLC; and William Anderson, III.

### Statement of Facts

On January 28, 2009, Plaintiff J.T., his chaperone Tyler Thompson, and four other moto cross riders came to the Monster Mountain Moto Cross Park in Tallassee, Alabama. (Exhibit A, Thompson depo, p. 21:3-10; p. 24:11-15.)[1] Mr. Thompson is a former professional moto cross rider and tutors other riders in the sport. (Exhibit A,

---

[1] All Exhibits have been filed as an attachment to Plaintiff's Evidentiary Submissions in Opposition to Defendants' Motion for Summary Judgment

1

Thompson depo. p. 88:14-16; p. 90:3-5.)  The other riders—J.K., Ian Hecsher, Chris Bach and Travis Morris—were also students of Mr. Thompson.

In 2009, the Monster Mountain moto cross track was open for practice sessions from 10am to 4pm each day. (Exhibit B, Anderson depo. p. 95:7-8, 109:11-14). Defendants Andy Anderson, the track owner, and Milan Harris, one of Anderson's friends, regularly groomed the track either at night or early in the morning before practice started. (Exhibit B, Anderson depo. p. 105-107, 109:16; Exhibit A, Thompson depo p.94:13-18, 25; p. 95:1-3.) It was Defendants' custom and practice for the gate to the track to be open. (Exhibit A, Thompson depo. p. 93:14-20; 94:7-12; Exhibit C, Travis Morris declaration p. 2.).  It was also Defendants' standard procedure to require each rider to pay a fee and sign a release form before going on the track.  On all prior visits to the track, J.T., Mr. Thompson, and the others were allowed to ride on the track as soon as they signed the release form and paid their fee.  They were familiar with Defendants' standard procedure that, as soon as they paid their fee and signed the release, they were free to begin riding. (Exhibit A, Thompson depo. p. 91:20-25, p. 92:1-2; p. 96:17-25; p. 97:4-22; Exhibit C, Travis Morris declaration p. 2.)

On February 1, 2009, Anderson had partially finished the grooming work on the track.  But Milan Harris had not yet arrived to finish the grooming, which usually took around 30 minutes.  (Exhibit B, Anderson depo. p. 111:21.)  Anderson knew that Harris still had to groom the track, and yet at this point, he made the following conscious decisions:

2

 (1) Anderson began walking through the grounds collecting fees and signatures, knowing that this process signaled the start of practice (Exhibit B, Anderson depo. p. 114:1-4);

 (2) Even though the fee/waiver collection process required him to speak with every group in the park, Anderson did not tell anyone that the track was closed, nor did he warn anyone that it was still in the process of being groomed (Exhibit A, Thompson depo. p. p. 97:4-11); and

 (3) Anderson left the gate to the track open while Harris was out on the track grooming (Exhibit C, Morris declaration p. 2).

 J.T., Thompson, and the other riders were not given any specific instructions from Anderson and/or Monster Mountain on that day.  (Exhibit A, Thompson depo. p. 97:4-11; Exhibit C, Morris declaration p. 2.)  None of them were informed by Anderson that the track was still being groomed.  At about 10:20am, J. T. decided to go up to the track to begin practicing. Thompson saw J.T. enter the track through the open gate, and then Thompson and Bach followed behind J.T., going out to the middle of the track where they could watch J.T.'s first lap.  Thompson could not see or hear that Milan Harris' tractor was on the track.  (Exhibit A, Thompson depo. p. 44:19-23; 45:3-11; p. 46:10-25; p. 47:1-9; p. 51:13-15.)

 J.T. also was not aware that Harris was still grooming the track.  (Exhibit D, J.T. depo p. 130:5-9.)  As J.T. rode his bike over a blind jump near the end of his first lap, he collided with the tractor that Harris was driving up the opposite side.  (Exhibit D, J.T. depo. p. 66:4-17)  The crash broke J.T.'s femur, hip, tibia, wrist and forearm, and also gave him a concussion. (Exhibit E, Pl. Resp. to Def. 1st Int. p. 7).

Defendant Harris admits that he saw Thompson and Bach in the middle of the track while he was still grooming but did not tell them that they were not supposed to be in the track area. (Exhibit F, Harris depo. p. 77:2-81:10.) Harris kept driving his tractor and proceeded to the area where the wreck occurred on the back side of a blind jump. (Exhibit F, Harris depo. p. 77:2-81:10.)

### Standard of Review

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Davis v. Wal-Mart Stores, Inc*, 2010 U.S. Dist. LEXIS 95172 (Sep. 13, 2010). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

### Argument

A. **It is the public policy of Alabama to protect a minor's right to sue.**

> "The disabilities of infancy are personal privileges conferred on infants
> by law, and as such they constitute limitations on the legal capacity of

4

> infants, not to defeat their rights, but to shield and protect them from the acts of their own improvidence as well as from acts of others." 42 AM JUR 2D INFANTS

For over a hundred years, Alabama has diligently guarded a minor's right to sue. *See Tennessee Coal v. Hayes*, 97 Ala. 201, 209-210, 12 So. 98, 102-103 (1893) (explaining that a parent and next friend of an infant "cannot release the cause of action, nor compromise it, nor submit it to an arbitration the result of which will be binding on the infant."). While the issue of pre-injury release forms signed by a chaperone on behalf of a minor has not been specifically addressed, the courts and the legislature have recognized exceptions in many other areas of the law for the purpose of protecting a minor's interests. First of all, a minor's claim against a defendant cannot be settled by a parent or guardian without express court approval. The court, in such an instance, is "charged with the duty of controlling the suit to the protection of the infant's interest." *Abernathy v. Colbert County Hosp. Bd.*, 388 So. 2d 1207, 1209 (Ala. 1980) (quoting *Tennessee Coal* at 209). Moreover, any such attempt by a parent to release a minor child's cause of action is treated by the Court "as if it were not and had never been." *Id.*

Alabama's public policy of protecting a minor's right to sue is also reflected in the tolling of statutes of limitation under Ala. Code § 6-2-8:

> If anyone entitled to commence any of the actions enumerated in this chapter…is, at the time the right accrues, below the age of 19 years, or insane, he or she shall have three years, or the period allowed by law for the commencement of an action if it be less than three years, after the termination of the disability to commence an action.

This section "demonstrates [the] legislative response to the need to protect individuals suffering under certain disabilities," such as minority. *Emerson v. Southern Railway Co.*, 404 So. 2d 576, 578 (Ala. 1981). Moreover, case law has established that the

5

appointment of a guardian does not cure the disability, and thus does not commence the running of the statute of limitations.  *See Id.* at 579  (*see also Hood v. Johnston*, 99 So. 75 (1924) ("The authorities hold that, whatever may or may not have been done by his guardian, the plaintiff, upon coming of age, was entitled under the statute to sue in his own name.")).  By not allowing the actions of a guardian to have any effect, Alabama courts have demonstrated their steadfast commitment to preserving a minor's right to pursue his cause of action.

Finally, the law of contracts also contains exceptions that are intended to work in a minor's best interest.  In Alabama, contracts signed by minors are voidable at the option of the minor[2]. "It is the policy of the law to protect infants against their own mistakes or improvidence, and from designs of others, and to discourage adults from contracting with an infant." *Ex parte Odem*, 537 So. 2d 919, 920 (Ala. 1998).  Early cases discussing this rule explained that "a minor must use his privilege as a shield to defend himself." *Manning v. Johnson*, 26 Ala. 446, 451 (Ala. 1855).

Thus, there is a clear public policy of protecting minors from their own mistakes and also from "the designs of others."  Therefore, the release form signed by the minor's chaperone violates the clear public policy of Alabama and renders the release null and void.  Had the waiver been signed by J.T. himself, it would have been a contract that J.T. as a minor could choose to disaffirm under the rule of *Ex parte Odem*.  Further, if courts prohibit guardians from settling a case on behalf of minors after an injury, and if they also refuse to give effect to the actions of a minor's guardian with regard to the

---

[2] The one exception to this rule is that minors are liable when it comes to contracts for the purchase of necessaries. *Ex parte Odem*, 537 So. 2d 919, 920 (Ala. 1998).

6

statute of limitations, then the release signed by J.T.'s chaperone should be similarly invalidated.

### B.  Alabama courts are reluctant to enforce pre-injury waivers, even in the case of adults.

When it comes to pre-injury waivers in general, Alabama courts have long questioned the ability of a party to contract against its own negligence. *Alabama Great Southern R.R. v. Sumter Plywood Corp.,* 359 So. 2d 1140, 1145 (Ala. 1978). The rationale for such wariness is as follows:

> [I]t is a well recognized general principle, founded on human experience, that Agreements exempting persons from liability for negligence induces a want of care, for the highest incentives to the exercise of due care rest in consciousness that a failure in this respect will fix liability to make full compensation for any injury resulting from the cause. *Id.*

In *Taylor v. Leedy & Co.,* 412 So.2d 763 (Ala. 1982), Justice Faulkner explained the inequities and injustices that would be caused if exculpatory clauses were allowed for personal injuries:

> This Court should not be an instrument of inequity and injustice. An exculpatory clause of this type contravenes the long established common law rules of tort liability. The question is whether this Court will sanction the statewide immunization of landlords for personal injuries, encourage landlords to neglect the duties imposed on them by law for the protection of tenants, and expose tenants to the risk of injury through a landlord's carelessness. The Court should not sanction such a rule. *Taylor* at 766.

This fundamental principle was recently reaffirmed in *A.G.F. Marine Aviation Transport v. Laforce Shipyard, Inc.,* 2006 U.S. Dist. LEXIS 58633 (S.D. Ala. Aug. 18, 2006), where the Court declared that, to the extent a contract disclaims liability for a defendant's own active negligence, that disclaimer is void because such a provision would foster negligence in the performance of a contract and not deter it.

7

Defendants cite three Alabama cases in support of their contention that the waiver in this case should be upheld: *Barnes v. Birmingham International Raceway*, 551 So. 2d 929 (Ala. 1989); *Young v. City of Gadsden*, 482 So. 2d 1158 (Ala. 1985); and *Gore v. Tri-County Raceway, Inc.*, 407 F. Supp. 489 (M.D. Ala. 1974) (federal case that analyzed the waiver issue under state law).  However, each of these cases involved a very specific scenario—wrecking during the course of a competitive automobile race event—that limits the application of those holdings to the present case.  Moreover, portions of *Young* have been overruled because it went too far in allowing defendants to contract away liability for wantonness.  *Barnes* has established that even in the competitive race scenarios of those three cases, releases that bar claims for wantonness are void.

There are several key differences between the above racing cases that make them inapplicable to J.T.'s case.  First, J.T. was not injured in a race scenario—he was merely taking a warm-up lap around the track to start off a day of practice.  There was no "event" that he had signed up to be a part of, nor any prize money that he was trying to win.  Second, the above plaintiffs were injured by a foreseeable risk contemplated by the pre-race release (wrecking during the race), but here J.T. was injured by activity not contemplated by him, his parents, or Mr. Thompson (colliding with a tractor that was not supposed to be on the track).  (Exhibit A, Thompson depo. p. 98:22-25; p. 99:13.)  Finally, and most important, the plaintiffs in the racing cases were adults and actually read and signed the release themselves, whereas in this case plaintiff J.T. is a minor and his chaperone signed the release on his behalf.  These automobile race cases simply do not govern nor apply to the instant case.

### C. The pre-injury waiver signed by J.T. should be declared void. Other jurisdictions hold such waivers invalid, and considering Alabama's policy of protecting minors and its hesitance to enforce pre-injury waivers, such a finding would be consistent with Alabama law.

When the plaintiff who entered into the exculpatory agreement is a minor, even more questions are raised as to the agreement's validity. Other district courts in the Eleventh Circuit as well as other state courts have held pre-injury waivers involving minors are invalid. *See In re Royal Caribbean Cruises, Ltd.*, 459 F. Supp. 2d 1275, 1279 (S.D. Fla. 2006); *In re Royal Caribbean Cruises, Ltd.*, 403 F. Supp. 2d 1168, 1173 (S.D. Fla. 2005); *see also Hojnowski v. Vans Skate Park*, 187 N.J. 323, 339 (N.J. 2006) ("[T]he question whether a parent may release a minor's future tort claims implicates wider public policy concerns and the *parens patriae* duty to protect the best interests of children."); *Applegate v. Cable Water Ski, L.C.*, 974 So. 3d 1112, 1114 (Fla. Dist. Ct. App. 5th Dist. 2008) ("[A]lthough the scales of public policy might tip in favor of the enforcement of exculpatory contracts involving consenting adults, we think they tip the other way when children are the subject.").

In each of the *Royal Caribbean* cases, the Plaintiffs were minors injured while operating jet skis in the Bahamas. Their parents had signed a release form that purported to "fully release and forever discharge Royal Caribbean Cruises…of and from any and all actions…arising from any accident, injury, or property damages whatsoever." *Id.* at 1279. The Court in both cases found that the negligence claims of the minors were not waived by the release form, even though the parents had waived their own individual claims. 459 F. Supp. 2d at 1280; 403 F. Supp. 2d at 1172. The

9

Court analyzed cases from other circuits dealing with pre-injury releases signed on behalf of minors and settled on the following general rule:

> Generally, parental pre-injury releases are upheld when they involve activities related to school, volunteer, or community events but are invalidated when they involve activities related to private for-profit activities. 459 F. Supp. 2d at 1281.

This distinction was clarified by explaining that potential liability is a risk against which a for-profit business could insure itself, whereas that might be more difficult for a non-profit or volunteer organization. Moreover, public policy favors the participation of minor children in non-profit and volunteer activities. 403 F. Supp. 2d at 1172.

Monster Mountain is a private, for-profit business registered as a Limited Liability Company with Alabama's Secretary of State. (Exhibit G, Secretary of State website) At the time Tyler Thompson signed a waiver on J.T.'s behalf, J.T. was fourteen years old. In a state where a minor's right to sue has been consistently protected for over a century, surely that right would not be taken away in the case of a pre-injury waiver, which courts have found suspect even in the case of adults. The state's authority as *parens patriae* is broader than that of a parent or guardian, and may be invoked when necessary to protect children. *Global Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 399 (Fla. 2005).

Because the waiver J.T.'s chaperone signed should be held invalid, there remains a genuine question of material fact over whether Defendants negligently and/or wantonly maintained their park as to injure Plaintiff.

WHEREFORE, THESE PREMISES CONSIDERED, Plaintiffs request that this Court DENY Defendants' Motion for Summary Judgment.

      /s/Michael J. Crow
MICHAEL J. CROW (CR0039)
Attorney for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160

## CERTIFICATE OF SERVICE

      I hereby certify that on the 1st day of October, 2010, I served the foregoing with upon the parties listed below via CM/ECF.

      /s/Michael J. Crow
OF COUNSEL

**Attorney for Defendants, Monster Mountain, LLC, d/b/a Monster Mountain MX Park; Double AA Enterprises, LLC; and William Anderson, III:**

R. Brett Garrett
Rushton, Stakely, Johnston & Garrett, PA
PO Box 270
Montgomery, AL 36101-0270
bg@rsjg.com (email)

**Attorney for Defendants Precision Cycle, LLC, and Milan Harris:**

Joseph W. Warren
JOSEPH W. WARREN, P.C.
6706 Taylor Circle
Montgomery, AL 36117