IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| J.T., Jr., a minor who sues by and through SUSAN THODE, his mother and next of friend, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO.  2:09cv643-WHA-TFM ) (WO) |
| MONSTER MOUNTAIN, LLC, D/B/A MONSTER MOUNTAIN MX PARK; DOUBLE AA ENTERPRISES, LLC; PRECISION CYCLES, LLC, D/B/A TRACK SIDE PERFORMANCE PRO SHOP; WILLIAM ANDERSON, III; and MILAN HARRIS, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment filed by Monster Mountain, LLC ("Monster Mountain"); Double AA Enterprises, LLC ("Double AA"); and William Anderson, III ("Anderson," collectively, the "Monster Mountain Defendants") (Doc. #30).  The Plaintiff, J.T., Jr. ("J.T.") filed a Complaint in this case alleging that Monster Mountain, Double AA, Anderson, Precision Cycles, LLC, and Milan Harris (collectively, the "Defendants") are liable to him on the basis of premises liability, negligence, and wantonness. The Monster Mountain Defendants moved for summary judgment on the negligence cause of action, asserting that a contractual exculpatory clause bars J.T.'s claim.  For the reasons to be discussed, the Motion for Summary Judgment is due to be DENIED.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A), (B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be

believed and all justifiable inferences must be drawn in its favor.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

J.T. is a minor from the state of Indiana and a competitive motocross rider.  On January 29, 2009, J.T. traveled to Monster Mountain MX Park in Alabama, a motocross park owned by Double AA.  He was accompanied by several friends and his coach, James Tyler Thompson ("Thompson").  Prior to departing, J.T.'s parents signed a notarized document authorizing Thompson to "act as our son's legal guardian in our absence for the purpose of signing all release of liability and registration forms and to give consent for medical treatment."  (Doc. #30-1.)

To ride at Monster Mountain, all riders must pay an entry fee and execute a Release and Waiver of Liability and Indemnity Agreement (the "Release").  The Release reads in pertinent part:

> IN CONSIDERATION of being permitted to enter . . . EACH OF THE UNDERSIGNED, for himself, his personal representatives, heirs, and next of kin, acknowledges, agrees and represents that he has, or will immediately upon entering . . . [inspect the premises] . . .

> [and] HEREBY RELEASES, WAIVES, DISCHARGES, AND COVENANTS NOT TO SUE the . . . track operator [or] track owner . . . from all liability to the undersigned, his personal representatives, assigns, heirs, and next of kin for any and all loss or damage . . . whether caused by the negligence of the releasees or otherwise while the undersigned is in or upon the restricted area . . .
>
> [and] HEREBY AGREES TO INDEMNIFY AND SAVE AND HOLD HARMLESS the releasees and each of them from any loss, liability, damage, or cost they may incur due to the presence of the undersigned in or upon the restricted area . . .
>
> [and] HEREBY ASSUMES FULL RESPONSIBILITY FOR AND RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of releasees or otherwise . . . .
>
> THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER . . . and further agrees that no oral representations, statements or inducements apart from the foregoing written agreement have been made.

(Doc. #30-2.)

During his first three days at Monster Mountain, J.T. rode without incident. On the morning of February 1, 2009, J.T., Thompson, and the other riders who traveled with them, arrived at Monster Mountain for another day of riding.

After J.T. and Thompson signed the Release, with Thompson signing on J.T.'s behalf, Thompson paid J.T.'s entry fee, and J.T. entered Monster Mountain and began riding around the track. Subsequently, J.T. rode over a blind jump, became airborne, and crashed into a tractor on the track that he did not see until he was airborne. J.T. alleges, among other causes of action, that Defendants' failure to remove the tractor from the track constituted negligence.

## IV.  DISCUSSION

The issue before the court is whether J.T.'s negligence claims against the Monster Mountain Defendants are barred by the Release. The Monster Mountain Defendants contend that they are entitled to summary judgment because J.T. signed the Release and Thompson "signed [the Release] on [J.T.'s] behalf," thus binding J.T. to a contract that exculpates the Monster Mountain Defendants from liability for J.T.'s injuries. (Br. in Supp. of Mot. for Summ. J. at 3.)

J.T. responds that, under Alabama law, a contract made with a minor is voidable. *Young v. Weaver*, 883 So. 2d 234, 236-37 (Ala. Civ. App. 2003).[1] J.T. argues that because the Release is effectively a contract with a minor, whether signed on his behalf or not, the Release is not binding on him.

The Monster Mountain Defendants concede that J.T.'s signature on the contract cannot make it binding, due to the rule that a contract with a minor is voidable. However, they attempt to overcome J.T.'s argument by asserting that Thompson, an adult who was acting on behalf of J.T.'s parents, signed the Release on J.T.'s behalf. Thus, the Monster Mountain Defendants contend that if a child's parents, acting through an agent, sign an exculpatory contract on their child's behalf, the contract is binding on the child and not voidable.

As the following discussion indicates, the court agrees with J.T., and therefore, summary judgment is due to be denied.

**A.    Alabama Law**

---

[1] One exception to the rule that a contract with an infant is voidable at the election of the infant is that "when an infant executes a contract, the infant is liable only on his implied promise to pay for necessaries." *Ex parte Odem*, 537 So. 2d 919, 920 (Ala. 1988).

5

The parties agree that Alabama law applies in this case. They also agree that Alabama courts have not addressed the specific factual situation presented by this case. However, Alabama courts have dealt with three relevant legal principles.

First, Alabama, like virtually all jurisdictions, applies the longstanding common law rule that, except for a contract for necessaries, "a minor is not liable on any contract he makes and that he may disaffirm the same." *See, e.g.*, *Young*, 883 So. 2d at 236 (internal punctuation omitted). This rule exists to protect minors from being taken advantage of by others due to minors' "improvidence and incapacity." *Bell v. Burkhalter*, 57 So. 460 (Ala. 1912) (citing *Am. Freehold Land Mortg. Co. v. Dykes*, 111 So. 292, 294 (Ala. 1895)). This rule is firmly entrenched in the common law and has existed at least since the year 1292. 5 Richard A. Lord, *Williston on Contracts* § 9:2 (4th ed. 1993).

Second, while Alabama courts have noted an exception to this rule, that exception is narrow. In *Peck v. Dill*, the Alabama Supreme Court held that a parent could sign a binding contract on behalf of a child, pursuant to a health care plan, that required the child to subrogate the health insurer for injuries caused by third parties. 581 So. 2d 800, 802 (Ala. 1991), *overruled on other grounds by Ex Parte State Farm Fire & Cas. Co.*, 764 So. 2d 543, 544, 546 (Ala. 2000)). The court noted that contracts involving minors are generally voidable, yet carved out an exception to this default rule due to the following policy considerations (1) "the availability of medical insurance to minors depends on whether parents" can bind their children to these subrogation clauses; (2) "a minor cannot take the benefits of a contract while disaffirming the burdens;" and (3) a minor not bound to this subrogation clause would receive a windfall by

6

recovering from both an insurer and a tortfeasor for the same injury. *Id.* at 804 (quoting *Hamrick v. Hosp. Serv. Corp.*, 296 A.2d 15, 17-18 (R.I. 1972)).

Third, Alabama courts have restricted the right of a parent or guardian to release a minor's post-injury claims. *Abernathy v. Colbert Cnty. Hosp. Bd.*, 388 So. 2d 1207, 1209 (Ala. 1980). Specifically, a parent or guardian cannot bind a minor to a settlement that releases the minor's post-injury claims without express court approval. *Id.* The rationale behind the need for express court approval, similar to the voidable contract rule for minors, is to protect the minor's "best interest[s]." *Id.*

The teaching of these cases is that, in Alabama, the default rule is that contracts with minors are voidable. While the Alabama Supreme Court has shown willingness to make a narrow exception to this rule in the unique factual scenario from *Peck v. Dill*, that case serves as an exception, not a change in, the default rule.

B.    **Law from Other Jurisdictions**

Because no Alabama case or statute directly addresses the issue of the case at bar, the court turns to the law of other jurisdictions for persuasive guidance. There are three important conclusions to be drawn from the law of other jurisdictions.

First, the majority rule in the United States is that parents may not bind their children to pre-injury liability waivers by signing the waivers on their children's behalf. *See, e.g.*, *Galloway v. Iowa*, No. 08-0776, 2010 WL 4365953, at *4 (Iowa Nov. 5, 2010) (listing cases and stating that "the majority of state courts who have examined the issue . . . have concluded public policy precludes enforcement of a parent's preinjury waiver of her child's cause of action for injuries

caused by negligence"); *Kirton v. Fields*, 997 So. 2d 349, 356 (Fla. 2008) (listing cases, and stating that "[i]n holding that pre-injury releases executed by parents on behalf of minor children are unenforceable for participation in commercial activities, we are in agreement with the majority of other jurisdictions.").

Second, many courts rejecting parents' right to bind children to pre-injury releases have relied on legal principles recognized by Alabama, as discussed above. For example, courts have relied in part on the principle that parents may not bind a child to a settlement releasing post-injury claims without court approval. *Galloway*, 2010 WL 4365953, at *6 ("As the Washington Supreme Court has noted, if a parent lacks authority without court approval to compromise and settle her minor child's personal injury claim after an injury has occurred, 'it makes little, if any, sense to conclude a parent has the authority to release a child's cause of action prior to an injury.'") (quoting *Scott v. Pac. W. Mountain Resort*, 834 P. 2d 6, 11-12 (Wash. 1992)); *accord Hojnowski v. Vans Skate Park*, 901 A.2d 381, 386 (N.J. 2006); *Meyer v. Naperville Manner, Inc.*, 634 N.E.2d 411, 414-15 (Ill. App. Ct. 1994). Courts have also relied on the policy, also recognized in Alabama, of the state's role of protecting minors from harm. *See, e.g.*, *Kirton*, 997 So. 2d at 357-58; *Hojnowski*, 901 A.2d at 386; *Meyer*, 634 N.E.2d at 414-15.

Third, the only published decisions from other jurisdictions that have bound children to pre-injury releases executed by a parent or guardian on the child's behalf have done so in the context of a "minor's participation in school-run or community-sponsored activities." *Kirton*, 997 So. 2d at 356 (citing *Hohe v. San Diego Unified Sch. Dist.*, 224 Cal. App. 3d 1559 (1990); *Sharon v. City of Newton*, 769 N.E. 2d 738 (2002); *Zivich v. Mentor Soccer Club, Inc.*, 696 N.E.

2d 201, 205 (1998). By contrast, this court is not aware of a single case, that has not been overturned, that has held these clauses to be binding in the context of a for-profit activity.[2]

### C.   Application to the Case at Bar

The court concludes, based on the law of Alabama as well as persuasive authority from other jurisdictions, that the Release signed by Thompson on J.T.'s behalf is not binding on J.T.

First, J.T. is a minor, so the applicable default rule under Alabama law is that any contract made with J.T. is voidable.

Second, there is no exception under current Alabama law that requires that this court apply a different rule under the facts of this case. For example, the policy considerations that the Alabama Supreme Court discussed in *Peck*, of ensuring that minors receive medical care and do not receive windfalls, do not apply to the facts of this case. This is not a case about a child receiving medical care, rather, it is a case about a child participating in a recreational event.

Third, under Alabama law, a parent may not bind a child to a settlement releasing the child's post-injury claims without express court approval. This court agrees with the rationale of other jurisdictions that it would be completely illogical if, despite this rule, a parent could bind a child, before any injury occurs, to an exculpatory clause releasing parties from any liability for injuries which might be caused in the future, simply by signing a contract on the child's behalf.

---

[2] In *Cooper v. Aspen Skiing Co.*, the Colorado Supreme Court reversed a Colorado appellate court's holding that a parent's waiver on behalf of a minor was binding in favor of a for-profit ski company. 48 P.3d 1229, 1230-31 (Colo. 2002). That case was subsequently superseded by a statute that stated that "[a] parent of a child may, on behalf of the child, release or waive the child's prospective claim for negligence." Colo. Rev. Stat. § 13-22-107(3). The fact that Colorado's legislature, not courts, modified the default rule that a contract with a minor is voidable suggests that changing this default rule should be a legislative choice.

Fourth, the weight of authority in other jurisdictions suggests that the release in this case is not binding. The majority rule in jurisdictions throughout the United States is that a parent may not bind a child to a liability waiver. Moreover, and more significantly, no published decision that has not been overturned holds that a parent may bind a child to a liability waiver in favor of a *for-profit* entity, such as the Monster Mountain Defendants in this case. The few cases that have upheld a pre-injury waiver have made a point of emphasizing that the policy reasons for doing so are based on the fact of the defendant being a non-profit sponsor of the activity involved, such as with school extra-curriculars.

Based on all of the above considerations, the court concludes that, under Alabama law, a parent may not bind a child to a pre-injury liability waiver in favor of a for-profit activity sponsor by signing the liability waiver on the child's behalf. Accordingly, the Release Thompson signed on J.T.'s behalf, based on authority given by J.T.'s parents, does not bar J.T. from asserting a negligence claim against the Monster Mountain Defendants. Summary judgment on this issue in favor of the Monster Mountain Defendants, therefore, is due to be DENIED.[3]

## V. CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment (Doc. #30) is ORDERED DENIED.

---

[3] The court does not hold that an indemnity agreement, such as that contained in another clause of the Release, signed by parents in order for their child to be allowed to participate in a dangerous activity, would not be enforceable against the parties. That issue is not presented.

Done this 9th day of December, 2010.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE