IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| J.T., Jr., a minor who sues by and through SUSAN THODE, his mother and next of friend, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO.  2:09cv643-WHA-TFM ) (WO) |
| MONSTER MOUNTAIN, LLC, D/B/A MONSTER MOUNTAIN MX PARK; DOUBLE AA ENTERPRISES, LLC; PRECISION CYCLES, LLC, D/B/A TRACK SIDE PERFORMANCE PRO SHOP; WILLIAM ANDERSON, III; and MILAN HARRIS, Defendants. | ) ) ) ) ) ) ) ) |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This cause is before the court on a Motion for Summary Judgment filed by Monster Mountain, LLC ("Monster Mountain"); Double AA Enterprises, LLC ("Double AA"); and William Anderson, III ("Anderson") (collectively, the "Monster Mountain Defendants") (Doc. #94).  The Plaintiff, J.T., Jr. ("J.T.") filed a Complaint in this case alleging that the Monster Mountain Defendants; Precision Cycles, LLC; and Milan Harris are liable to him on the basis of premises liability, negligence, and wantonness.  J.T. brings claims through his mother and next friend Susan Thode.  The Monster Mountain Defendants moved for summary judgment on the negligence cause of action, asserting that a contractual exculpatory clause bars J.T.'s claim.  In a previous Memorandum Opinion and Order, this court denied that motion for summary judgment.  Doc. #54.  The case was set for trial, but then stayed upon a suggestion of bankruptcy filing by

Anderson. The Plaintiff filed a motion for relief from the automatic stay, which was granted by the bankruptcy judge. This court then lifted the stay in this case.

The Defendants sought additional discovery in the case, stating that they had to file a dispositive motion addressing the Plaintiff's wantonness claims, to protect the Defendants' interests beyond bankruptcy. Doc. #91. This court declined to allow for additional discovery, but did extend the time for filing summary judgment motions so as to allow for a motion for summary judgment on the wantonness claim. Doc. #93.

The Motion for Summary Judgment as to the wantonness claims was filed on October 7, 2011. The Plaintiff was given an opportunity to respond to the motion and the Monster Mountain Defendants were given an opportunity to reply. The case is now before the court on the Monster Mountain Defendants' motion and brief, and the Plaintiff's response, no reply having been filed by the Monster Mountain Defendants.

For reasons to be discussed, the Motion for Summary Judgment is due to be DENIED.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

### III.  FACTS

The submissions of the parties establish the following facts, viewed in a light most favorable to the non-movant:

J.T. is a minor from the state of Indiana and a competitive motocross rider. On January 29, 2009, J.T. traveled to Monster Mountain MX Park in Alabama ("Monster Mountain"), a

motocross park owned by Double AA.  He was accompanied by several friends and his coach, James Tyler Thompson ("Thompson").

On the morning of February 1, 2009, J.T., Thompson, and the other riders who traveled with them arrived at Monster Mountain for a day of riding.   Defendant Anderson, the track owner, and Milan Harris ("Harris") groom the track.  Although not an employee, Harris worked on the track "for the most part" under the direction and control of Anderson.  Harris Dep. at p. 36: 18-21.

That February morning, Anderson had partially completed grooming work on the track and knew Harris was going to complete the grooming when he arrived.   Anderson saw Harris arrive shortly after Anderson got to the Monster Mountain parking lot to collect riders' fees.  Anderson Dep. at p. 114: 11-114.  Anderson did not tell anyone that grooming of the track had not been completed when he took up the fees and signatures that morning.

J.T. and Thompson signed a release and paid J.T.'s entry fee.   Thompson was asked in his deposition whether he asked Anderson if the track was open and Thompson testified in his deposition that "I looked at him and, you know, when we signed– every time we signed I didn't really per se say it, but we knew, once we signed and paid, the track was open." Thompson Dep. at p. 50: 3-9.  The gate to the track was open.   J.T. entered the track and began riding around the track.  Thompson and rider Chris Bach walked on to the track, following behind J.T.  Harris saw Thompson and Bach on the track and continued to drive his tractor on the track.  When asked in his deposition if while he was grooming the track Harris found it unusual that there were people with a motorcycle in the starting gate, Harris answered, "It was unusual that they were on the bikes, but people usually, you know, jump over the fence and walk around the track in the

4

morning to look at it." Harris Dep. at p. 80: 17-23. Harris also agreed in his deposition that if riders are allowed on the track when there is equipment there, it is foreseeable that someone could get injured. *Id.* at p. 93: 10-14. Anderson also stated in his deposition that there have been accidents where riders crashed with tractors at other parks in the past. Anderson Dep. at p. 146: 21-147: 12.

J.T. did not drive slowly on the first lap to test the track, but instead drove aggressively. J.T. rode over a blind jump, became airborne, and crashed into the tractor driven by Harris, resulting in injuries to J.T.

## IV. DISCUSSION

The Monster Mountain Defendants have moved for summary judgment as to the wantonness claims asserted by the Plaintiff.

> "Wantonness" is statutorily defined as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975, § 6–11–20(b)(3). 'Wantonness" has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. *Bozeman v. Central Bank of the South*, 646 So.2d 601 (Ala.1994). To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff. *Joseph v. Staggs*, 519 So.2d 952 (Ala.1988).

*Alfa Mutual Insurance Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998). The Alabama Supreme Court has explained that, "[w]antonness is not merely a higher degree of culpability than negligence. Negligence and wantonness, plainly and simply, are qualitatively different tort concepts of actionable culpability." *Tolbert v. Tolbert*, 903 So. 2d 103, 114 (Ala. 2004) (quotation marks and citations omitted). Alabama courts will allow a jury to determine whether conduct was wanton if there is evidence that would allow that determination. *Cash v. Caldwell*,

603 So. 2d 1001, 1003 (Ala.1992) ("Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness.").

The Monster Mountain Defendants contend that they are entitled to summary judgment on the wantonness claims because the Plaintiff cannot demonstrate that Anderson had a conscious understanding that he was creating a dangerous condition by leaving the gate open or failing to tell J.T. that the course was closed.  The Monster Mountain Defendants state that Anderson told Thompson that the track was not yet open,[1] J.T. was supposed to be monitored by a legal guardian, the tractor driven by Harris was obvious, riders could observe the track before riding, J.T. was an experienced rider, and Anderson was available to answer questions. Therefore, the Monster Mountain Defendants argue, there is no wantonness as a matter of law.

The Plaintiff responds that Anderson knew Harris would be grooming the track, but did not warn the riders not to enter the track.  Anderson instead collected fees and waivers which, according to Thompson's testimony, in the past had signaled that the track was open.  The gate to the track also was open.  The Plaintiff also points out that Harris knew there were people on the track as well as a motorcycle while he was grooming the track.[2]  Therefore, the Plaintiff argues Anderson and Harris had knowledge from existing circumstances and conditions that their conduct would likely result in injury.

---

[1] Although in their brief in support of summary judgment the Defendants state that Anderson informed Thompson that the track was not yet open, there is no citation to the evidence in support of this proposition.  Furthermore, the court must accept Thompson's evidence to the contrary as true in ruling on the Defendants' motion for summary judgment.

[2] The Monster Mountain Defendants did not file a reply brief, and, therefore, have not responded to the evidence regarding Harris's knowledge of the unusual presence of motorcycles on the track.

Alabama courts have concluded in the context of motor vehicle accident cases that a jury question is presented as to wantonness where drivers are aware of dangerous road conditions, their own conduct while driving, and a likelihood of injury.  *See, e.g., Hornady Truck Line, Inc. v. Meadows*, 847 So. 2d 908, 916 (Ala. 2002).

In this case, the evidence viewed in a light most favorable to the non-movant is that Anderson signaled that the track was open by taking fees and releases, Anderson knew that Harris had track grooming to complete, the gate was open, and J.T. was not told the track was not open.  There is also evidence that Harris saw people and motorcycles on the track, but continued to operate machinery on the track.  Also, Harris and Anderson testified in their depositions that they were aware that injury could result if riders were on the track along with equipment.  The court cannot conclude that this is a case in which "there is a total lack of evidence from which the jury could reasonably infer wantonness."  *Cash*, 603 So. 2d at 1003.  Accordingly, the Motion for Summary Judgment is due to be DENIED.

## V.  CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment is due to be and is hereby ORDERED DENIED.

Done this 14th day of December, 2011.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE